IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN ROSA and LILY ROSA, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CUTTER PONTIAC BUICK GMC ) <br> OF WAIPAHU, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | CV NO 01-00766 DAE BMK |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DISMISSING PLAINTIFFS' STATE LAW CLAIMS
WITHOUT PREJUDICE, AND DENYING AS MOOT PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

The Court heard both Plaintiffs' and Defendant's Motions on March 6, 2006. John Harris Paer, Esq., appeared at the hearing on behalf of Plaintiffs; Jan N. Wiedman, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motions and the supporting and opposing memoranda, the Court GRANTS Defendant's Motion for Summary Judgment, DISMISSES Plaintiffs' State Law Claims Without Prejudice, and DENIES AS MOOT Plaintiffs' Motion for Summary Judgment.

BACKGROUND

I.   Factual Background

On November 19, 2000, Plaintiffs attempted to purchase a 1999 GMC Jimmy from Cutter. Plaintiffs traded in their 1980 Jeep CJ7 and their 2000 Mazda B2500 truck as part of the transaction. Plaintiffs had purchased the Mazda from JN Chevrolet Mazda less than three months prior to trading it in for the GMC Jimmy. Plaintiffs also provided a check in the amount of $500 to cover a portion of the $3,000 down payment for the GMC Jimmy.

Plaintiffs executed several documents for this transaction. Plaintiffs executed a Retail Buyers Order and Invoice ("Order"), which noted that the Order was subject to credit approval and is not binding unless signed by the Seller. (Def.'s Concise Statement of Facts ("CSF") at Ex. B.) This document was not signed by Defendant. The Order also stated that the Plaintiffs agreed to pay the unpaid cash balance within seven days. Plaintiffs did not pay this amount within seven days.

Plaintiffs also initialed the Addendum to First Hawaiian Bank Credit Sale Contract (the "Addendum"). (Id. at Ex. A.) The Addendum states that it is intended to be the front page of the Credit Sale Contract and that sections I and II of the Addendum must be read and signed prior to signing the Credit Sale

Contract.  The Addendum further provides that this is not a door-to-door sale and there is no three-day right to cancel the purchase.  Immediately behind the Addendum is the four-page Credit Sale Contract, which has been filled in with typed written information regarding the terms of the contract, such as the annual percentage rate, finance charge, and amount financed.  Just above the signature line, the Credit Sale Contract states "subject to lender's credit approval."  (Id.) Neither Defendant nor Plaintiffs signed this document.  Plaintiffs claim that they do not know why this document was not signed, but that they signed all documents that Defendant presented to them for signature.

       Plaintiffs also signed or initialed a Vehicle Service Contract application, Odometer Disclosure Statement, Buyer Guide regarding limited warranty, a Notice of no right to cancel sale, a Notice to Cosigner, Chevrolet Warranty Program, Addition and Removal Form, and Cutter Sold Vehicle form. (Pls.' CSF at Ex. C.)  Plaintiffs then left with possession of the GMC Jimmy and Defendant retained the Jeep and the Mazda.

       On November 24, 2000, First Hawaiian Bank issued a confidential notice to Defendant declining Plaintiffs' credit application.  (Def.'s CSF at Ex. J.)[1]

---

[1] Plaintiffs claim that this document states that it is an approval of financing for Plaintiffs.  Although the bottom of the document uses the words "this approval\counteroffer," it is clearly not an approval of financing for Plaintiffs as

Via letter dated December 6, 2000, First Hawaiian Bank informed Plaintiffs that they were unable to grant the requested loan because of "delinquent past or present credit obligation with others poor credit performance with us." (Id. at Ex. K.)

On December 23, 2000, Plaintiffs received a call from Defendant informing them that they did not qualify for financing and that they needed to return the GMC Jimmy immediately. Plaintiffs returned the GMC Jimmy on December 27, 2000, and Defendant returned to Plaintiffs the uncashed $500 check and the Jeep. Defendant did not return the Mazda because it had been repossessed by the lien holder, First Hawaiian Bank, on that same day.

According to First Hawaiian Bank's records, Plaintiffs' first payment for the Mazda was due on October 8, 2000, and at the time of the repossession, Plaintiffs were in first payment default and had not made any payments on the loan. (Id. at I.) Plaintiffs allege that they did not make any payments on the Mazda because Defendant's salesman told them that the balance owing on the Mazda would be paid off by Defendant as part of the deal. However, even if the salesman made these statements, Plaintiffs have not explained why they did not

---

under the decision category it states "DECL," and under the comments portion it states "derog credit– past due on curr FHB loan." Furthermore, this document was not sent to Plaintiffs but was sent to Defendant, who understood it to mean that Plaintiffs' financing was declined.

make the first two payments on the Mazda, which were due well before they entered into the November 19, 2000 transaction for the GMC Jimmy.

II.     Procedural History

Plaintiffs filed their Complaint on November 15, 2001, alleging damage to their credit, loss of the Mazda, and other damages as a result of Defendant's alleged violations of the Truth in Lending Act ("TILA") and violations of State law.  On May 13, 2002, Defendant filed a motion for judgment on the pleadings.  This Court granted that motion on September 13, 2002, based solely on its findings that "[b]ecause the condition precedent (qualification for financing) was not met, in the instant case, no contract was formed," and "the Truth in Lending Act does not apply to the instant transaction because, although Plaintiffs placed an order for a vehicle, consummation of the transaction was impossible due to Plaintiffs' failure to qualify for financing."  (Order Grant. Def.'s Mot. for J. on the Pleadings Pursuant to FRCP 12(c) as to First Claim for Relief and Dismiss. Without Prejudice Pls.' Remaining Claims at 6-7.)  This Court did not consider State law in making a determination of whether consummation occurred, and instead relied solely on Ninth Circuit cases interpreting TILA.  (Id.)

Plaintiffs appealed this Court's order on October 7, 2002.  On January 12, 2005, the Ninth Circuit reversed and remanded the case to this Court.  In

remanding the case, the Ninth Circuit noted that in order to determine whether consummation had occurred, the court is required to look to state law, something which this Court had not done when it decided to grant the motion for judgment on the pleadings.  Rosa v. Cutter Pontiac Buick GMC of Waipahu, Inc., No. 02-17003, 2005 WL 78901, at * 1 (9th Cir. Jan. 12, 2005) (unpublished opinion), as amended.  The Ninth Circuit then cited two Hawaii statutes, Haw. Rev. Stat. § 476-3 regarding credit sale contracts and Haw. Rev. Stat. § 490:2-201 regarding the sale of goods.  Id.  The Ninth Circuit also noted that subsequent to this Court's granting of judgment on the pleadings, the Fourth Circuit held in Nigh v. Koons Buick Pontiac GMC, Inc., 319 F.3d 119, 124 (4th Cir. 2003), reversed on other grounds in Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50 (2004), that where the consumer is contractually obligated, "unfunded financing agreements are encompassed within the meaning of consummation under the Truth in Lending Act." Id.  The Ninth Circuit agreed with the Fourth Circuit's reasoning.  Thus, the Ninth Circuit found that "[t]he fact that the Rosas signed the Addendum and accepted the goods created a triable issue of fact regarding whether the Rosas became contractually obligated under Hawaii law, thereby precluding entry of judgment on the pleadings. " Id.  Therefore, the Ninth Circuit reversed and

remanded the case for this Court to reconsider in light of State law regarding contractual obligations and the <u>Nigh</u> case.

After remand, Defendant filed a Motion for Summary Judgment on October 12, 2005, arguing that the Complaint should be dismissed because TILA requirements were never triggered since Plaintiffs did not become contractually obligated under Hawaii law and therefore, no loan transaction was consummated. Defendant asserts that if this Court finds that TILA did not apply, it should decline supplemental jurisdiction over Plaintiffs' State law claims. Plaintiffs filed an opposition on December 15, 2005, and Defendant filed a reply December 23, 2005.

Plaintiffs filed their motion for summary judgment on October 11, 2005, arguing that Defendant violated TILA because the finance charge and annual percentage rate were underdisclosed. Defendant filed its opposition on December 16, 2005, and Plaintiffs filed a reply on December 22, 2005.

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. Cal. Depot of Corr.</u>, 419 F.3d 885, 891 (9th Cir.

2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial"and  may not rely on the mere allegations in the pleadings.  Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence

without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

I.   TILA Claim

Defendant argues that Plaintiffs' TILA claim should be dismissed since there is no genuine issue of fact that: (1) Plaintiffs did not become contractually obligated since they did not sign the Credit Sale Contract, (2) alleged contemporaneous oral statements that financing was guaranteed cannot contradict the written agreement between the parties, (3) the condition precedent of lender's credit approval was not fulfilled, and (4) title could not have passed by merely accepting the goods since the parties explicitly agreed that the sale was pending credit approval.

Under TILA, creditors are required to make certain disclosures prior to consummation of the credit transaction. 12 C.F.R. § 226.17(b). "TILA liability, however, cannot accrue until a credit transaction is consummated, or put another way, 'until credit is in fact extended,' . . . since until credit is extended to a person in a particular transaction there are no credit terms against which to assess a disclosure's accuracy." Nigh, 319 F.3d at 123 (citation omitted). The issue then is what constitutes consummation of a credit transaction. Id.

The TILA regulation referred to as Regulation Z defines "consummation" as "the time that a consumer becomes contractually obligated on

a credit transaction." 12 C.F.R. § 226.2(a)(13). "When a consumer 'becomes contractually obligated' is, in turn, determined by looking to state law." Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989). Pursuant to the Ninth Circuit's remand in this case, this Court will now consider the two Hawaii statutes cited by the Ninth Circuit and other Hawaii law on the issue.

Under Hawaii law, a credit sale contract must be in writing, contain, incorporate by reference, or otherwise clearly refer to all the agreement of the parties, and be *signed* by the parties. Haw. Rev. Stat. § 476-3. In addition, the credit sale contract must contain specific notice language to the buyer, the amount financed, and the finance charge. See Haw. Rev. Stat. § 476-3(d) and § 476-4(b).

Contracts for the sale of goods for the price of $500 or more are "not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and *signed* by the party against whom enforcement is sought . . . ." Haw. Rev. Stat. § 490:2-101 (emphasis added). The definition of the term signed "includes any symbol executed or adopted with present intention to adopt or accept a writing." Haw. Rev. Stat. § 490:1-101. In determining whether a document has been properly signed, "[t]he question always is whether the symbol was executed or adopted by

the party with present intention to adopt or accept the writing." Cmt. to Haw. Rev. Stat. § 490:1-101.

Here, Plaintiffs did not sign the Credit Sale Contract itself. Instead, Plaintiffs initialed the Addendum to First Hawaiian Bank Credit Sale Contract. Thus, the issue is whether initialing the Addendum and accepting the GMC Jimmy contractually obligated Plaintiffs to the Credit Sale Contract. This Court finds that it does not.

First, the Addendum is one page and covers only an "as is" clause and a "door-to-door" sale notice. Nothing in the Addendum or any other document signed by the Plaintiffs covers the terms that are required by Haw. Rev. Stat. § 476-3 and § 476-4 to be in a Credit Sale Contract, such as the notice language to the buyer, the amount financed, and the finance charge. See Haw. Rev. Stat. § 476-3(d) and § 476-4(b). Furthermore, there is no language in the Addendum that states that it incorporates by reference the Credit Sale Contract. Instead, the Addendum states in bold that it "must be read and signed prior to signing the Credit Sale Contract," which clearly indicates that there are two separate documents that must be signed separately. (Def.'s CSF at Ex. A.) The Addendum's statement that it is intended to be the front page of the Credit Sale Contract just reinforces the fact that it is to be read and signed prior to signing the

Credit Sale Contract. The Addendum does not state that it is the first page of the Credit Sale Contract, or otherwise indicate that signing the Addendum replaces a signature on the Credit Sale Contract. There is nothing in the Addendum that supplants the Credit Sale Contract. Therefore, there is no indication that Plaintiffs had the intention to adopt or accept the terms of the Credit Sale Contract.

In addition, accepting the goods did not create an enforceable contract, since again, Hawaii law requires signature to a contract that contains certain terms of the credit transaction and Plaintiffs did not sign such contract. See Jackson, 890 F.2d at 120 ("[c]onsummation, however, does not occur merely because the consumer has made some financial investment in the transaction."). Accordingly, merely accepting the goods does not establish the terms under which the goods were accepted.

Finally, to hold otherwise would be inconsistent with the purposes of TILA, which is to protect the consumer. Specifically, in this case, the Ninth Circuit adopted the Fourth Circuit's reasoning in the Nigh case, which held that "consummation, or extension of credit, under § 1638 encompasses unfunded, financing agreement options *to which consumers contractually commit*, *and under*

*which they can be bound at the lender's sole discretion.*" 319 F.3d at 124, cited in Rosa, 2005 WL 78901, at * 1 (emphasis added).[2]

Here, however, there is no evidence that under Hawaii law, Plaintiffs contractually committed to the extension of credit.  First Hawaiian Bank or Defendant would not be able to enforce the Credit Sale Contract against Plaintiffs, since Plaintiffs never signed it, as required by Hawaii law, and thus Plaintiffs never agreed to the specific credit transaction terms.  See Gibson v. LTD, Inc., 434 F.3d 275, 282 (4th Cir. 2006) (citing Official Staff Commentary ¶ 2(a)(13)-2, the court noted that "[c]onsummation does not occur when the consumer becomes contractually committed to a sale transaction, unless the consumer also becomes legally obligated to accept a particular credit arrangement"); see also Grimes v. New Century Mortg. Corp., 340 F.3d 1007, 1010 (9th Cir. 2003) ("under Reg. Z consummation cannot occur until the borrower becomes "contractually obligated,"

---

[2]The reasoning behind this rule is that TILA's express purpose of ensuring that consumers receive adequate disclosures before becoming obligated to credit transactions could not otherwise be effectuated.  Id.  For example, if "consummation" did not include a situation where the consumer committed to a financing agreement "that provides unilateral power for the creditor to execute the agreement later, creditors could intentionally provide faulty disclosures to consumers, obtain their commitment, and then afterwards provide accurate disclosures prior to closing the transaction, which if provided earlier might have dissuaded the consumer from accepting the credit, all without incurring TILA liability."  Id.

14

and under state law, the borrower is not contractually obligated before a contract between the two parties is formed.  Reg. Z does not purport to substitute "consummation" for "formation of a contract."").

With a slightly different fact pattern, a consumer who did not sign a Credit Sale Contract may have never actually even seen the document, and thus, it would violate TILA to find the consumer contractually obligated based solely upon the consumer's execution of a one-page addendum that did not contain any of the required TILA disclosure terms, such as the variable rate, or the terms required by Hawaii law.  See Bragg v. Bill Heard Chevrolet Inc.-Plant City, 374 F.3d 1060, 1065 (11th Cir. 2004) (TILA transactions are to be evaluated from the consumer's viewpoint).

Thus, Plaintiffs' TILA claim is dismissed since Plaintiffs were never contractually obligated under Hawaii law to a credit transaction.[3]

II.    State Law Claims

Defendant requests that Plaintiffs' remaining State law claims be dismissed for lack of federal jurisdiction.  "When the court dismisses the federal

---

[3] Although this Court has again held in favor of Defendant, this order complies with the Ninth Circuit's remand since this Court based this ruling on Hawaii law and the Nigh case, and since this ruling is not based upon the condition precedent language contained in the unsigned Credit Sale Contract, as was its previous ruling.

claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." Gini v. Las Vegas Metro. Police Dept., 40 F.3d 1041, 1046 (9th Cir. 1994).

Plaintiffs request that this Court retain jurisdiction over their State law claims because they would be barred by the statute of limitations. Plaintiffs brought State law claims for unfair and deceptive acts and practices in violation of Hawaii Revised Statutes section 480 and for fraud. Unless tolled, actions for deceptive acts and practices have a four-year statute of limitations. Haw. Rev. Stat. § 480-24. Actions for fraud have a six-year statute of limitations. See Eastman v. McGowan, 946 P.2d 1317, 1323 (Haw. 1997) (since "[f]raudulent misrepresentation is not governed by a specific limitations period, . . . the general limitations period [of six years] set forth in HRS § 657-1(4) applies.").

Plaintiffs presented no evidence regarding the date of discovery of the alleged deceptive act or practice and/or whether any circumstances exist that allow for tolling of the statute of limitations on that claim. In addition, as the alleged fraud occurred in November 2001, the six-year statute of limitations has not yet run on this claim. Accordingly, this Court declines to retain jurisdiction over Plaintiffs' State law claims.

Therefore, this Court grants Defendant's Motion for Summary Judgment and dismisses Plaintiffs' State law claims without prejudice.  As summary judgment is hereby granted in favor of Defendant, Plaintiffs' summary judgment motion is moot.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment, DISMISSES Plaintiffs' State Law Claims Without Prejudice, and DENIES AS MOOT Plaintiffs' Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 23, 2006.



_____
David Alan Ezra
United States District Judge

Kevin Rosa, et al. v. Cutter Pontiac Buick GMC of Waipahu, Inc., CV No. 01-00766 DAE-BMK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' STATE LAW CLAIMS WITHOUT PREJUDICE, AND DENYING AS MOOT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT